## Case No. 10,589.
### ORR v. LACY.
[4 McLean. 243.] [1]

Circuit Court, D. Michigan. June Term. 1847.

BILLS AND NOTES SENT FOR COLLECTION—BLANK INDORSEMENT — PROTEST OF FOREIGN BILL — SURPLUSAGE—NOTARY'S SEAL—LAW MERCHANT AND CIVIL LAW — PURCHASE OF BILL AT DISCOUNT—USURY.

1. Words of surplusage. not descriptive of the bill, but of the place where it is payable, is no variance.

2. When notes or bills are sent for collection, they are, generally. indorsed in blank, so as to enable the holder to fill up an assignment to himself. Under this, he may bring a suit in his own name.
[Cited in Bank of America v. Senior, 11 R. I. 377.]

3. A foreign bill of exchange must be regularly protested, after a demand and refusal of payment.

4. A seal of a notary may be an impression made by the seal on paper, without wax or any other tenaceous substance.
[Cited in Re Phillips, Case No. 11,098; The Gallego, 30 Fed. 274.]

5. The seal of the notary is recognized in all countries where the law merchant prevails.

6. A seal is not required by the civil law.

7. Where evidence has been given. as to notice. the court will refer the matter to the jury, stating, as matter of law, what is a sufficient notice.

8. There is no usury in charging exchange on a bill drawn in Indiana, payable in New York.

9. A purchase of a bill at any discount or premium, not done to cover usury, is not usurious.

10. The notes of a Western specie paying bank are less valuable, generally, than the notes of Eastern banks. and this may be covered by a contract. without usury.
[Cited in Town of Danville v. Sutherlin, 20 Grat. (Va.) 567.]

11. The notes, it is alleged. were signed and indorsed in Michigan. but as they were negotiated at the bank in Indiana, the court held that, that was the place of contract.
[Cited in Buchanan v. Drovers' Nat. Bank, 5 C. C. A. 83, 55 Fed. 227.]

At law.

Joy & Porter, for plaintiff.
Romeyn & Dana, for defendants.

OPINION OF THE COURT. This action is brought on a bill of exchange, dated the 21st of September, 1840, for $3,842, payable six months after date, by Elijah Lacy, payable to the order of David Lacy, at the City Bank, New York City, which was accepted, but not paid. The jury being sworn, this bill was offered in evidence. A. Rogers, a notary public, was called to prove a demand of payment on the bill, protest for non-payment, and notice to the drawer and indorser. The objections stated on this point will be noticed at a subsequent stage of the proceeding; it being agreed that all exceptions may be taken at that time.

An objection is made to the admission of this bill, that it is not accurately described in the declaration. The declaration states the bill to be "payable, at the City Bank. New York City, in the state of New York." The only variance is, that the bill on its face was payable at the City Bank, New York City. And the declaration, after so describing the bill, adds "in the state of New York." Now, this is an additional fact stated, not as descriptive of the bill, but after stating that it was "payable at the City Bank, in New York City," "in the state of New York," is added. That is, the City Bank and the city of New York are in the state of New York. The declaration would have been good without this, as "New York City" is as well known as "the state of New York," but it is given as describing the state in which New York City is situated, and not as descriptive of the bill. There is no variance between the declaration and the bill which can exclude it from being received as evidence.

As by arrangement the questions of law were to be raised in the form of instructions to the jury, the instructions asked will be considered.

1. That it is not competent for a mere agent to maintain an action on a negotiable note, or bill of exchange, in his hands, though it be with the consent of his principal. And if the jury believe that the bill of exchange in controversy belonged, at the time of the institution of this suit, to the State Bank of Indiana, and that the plaintiff sues merely as its agent, then he is not entitled to recover. In answer to this, the fact may be admitted, that Joseph Orr sues as the agent of the bank. This is an ordinary transaction. not only with banks, but with all holders of bills, when it becomes necessary to send them to banks or other agents for collection. They are indorsed in blank, and this gives authority to the agent. not only to receive and receipt for the money, but to bring a suit in his own name, on the bill. There was a blank indorsement on the bill before us. and that is now filled up in the name of Orr, the plaintiff. This is, at least, prima facie evidence of a legal right to sue, and it is not controverted by evidence. This question can only become important, as regards the jurisdiction of the court, or set-offs. The suit is prosecuted with the assent of the bank, and, in fact, by it, in the name of the plaintiff.

2. That the defendant in this case, by drawing the bill of exchange in dispute did not assume an absolute, but a conditional liability, that after it was accepted, his liability and obligation were not to pay it at maturity if the acceptor did not pay it, but only to pay in case the bill should be legally presented for payment. and then in the event of a refusal or neglect to pay by the acceptor, that it should be regularly protested, and due notice given to him of the dishonor.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

That presentment for payment at maturity, and, at the proper place, demand of payment, refusal or neglect to pay, legal protest and due notice of these facts to the drawer, must all concur, before he can be held liable. This instruction was given as asked.

3. "That this being a foreign bill of exchange, in order to charge the drawer, it is necessary that it should have been regularly protested by a notary public." And it is contended that there is no evidence of Mr. Rogers having been a notary public. He swears that he was one on the 25th of March, 1841, but this bill was dishonored on the 24th. The court answer this by saying, that the principle in the instruction is correct; and they also say that the notarial seal is evidence of the character and authority of the notary.

4. "That in order to charge this defendant a regular protest must be produced, and that the paper attached to the bill of exchange in this case is not a sufficient and regular protest, not being under the seal of the notary." In support of this, it is argued, "that a seal is required by the law merchant. Story, Bills, 277; Chit. Bills, 455. The seal must be on wax at common law. 4 Kent, Comm. 453. In this state, it is conceded that it may be a scroll or device, but not by an impression on paper. Laws 1840, p. 167, § 8. In New York, by statute, public officers and courts may seal by an impression upon paper. 2 Rev. St. p. 404, § 61; 4 Kent, Comm. 453. The question then is, Will such an impression by a notary be recognized as a good sealing of the protest under the present law? But admit that a proper impression made in New York, may be a good one, a distinct and an important question arises, where is the evidence that this is the seal of the notary, or that Rogers was in fact a notary? To test this we ask the court to charge as follows: 'That there is no evidence before the jury that the paper attached to the bill of exchange, read in this case, is the protest of the bill of exchange by a notary.' And it is argued that, although a paper impression may be good in New York, still it does not follow that it proves itself in another state, for the law of evidence lex fori. 2 Hill, 227; Story, Confl. Laws, 634."

The court refuse the fourth and fifth instructions. The sufficiency of the notice, when the facts are not disputed, is a question of law. Story, Bills, 390. The notary swears that he made a demand for payment at the bank, at the maturity of the bill—that he regularly protested it for non-payment, and gave notice on the 25th of March, 1841. A seal is not required by the civil law, but it has been required by the common law from its earliest history. In 2 Rev. St. N. Y. 75: "Seals of courts and officers are authorized to be made by a direct impression on paper." Judge Cowen says, "that the seal

under this statute has no force beyond our own territory." If this be correct, it can be correct only in a very limited sense. In New York the common law form is adhered to, the impression must be made on wax, or some tenaceous substance; and under this rule the courts may not consider a scroll as a seal on private writings, but in regard to judicial records and public documents, the seal would be recognized as valid, if applied as required by the law of the state where it is used. The notarial seal proves itself in all countries where the law merchant prevails, and it is only necessary that it should conform to the law of the place where the notary acts. An impression upon the paper is as good as upon wax, or any tenaceous substance. An impression on the parchment or paper, with an intent to make a seal, is good at common law. Chancellor Kent says (4 Kent, Comm. 852, note a): "In public and notarial instruments, the seal or impression is usually made on the paper, and with such force as to give tenacity to the impression, and to leave the character of the seal upon it."

5. A notary is a commercial officer. His seal is an authentication of his acts, more generally acknowledged throughout the commercial world than that of any other officer. And this is sanctioned under the law merchant, which is a part of the common law, and is essential to commercial transactions.

6. That even if the bill had been regularly presented and protested, and the evidence of the protest is sufficient, the plaintiff is not entitled to recover, unless the jury believe that the defendant was duly and legally notified of the dishonor of the paper. The court will give this instruction, with the remark, that the notary having made the demand, and protest was required in regard to the notice to deposit it in the New York postoffice, directed to the residence of the party notified.

7. That there is no legal and sufficient evidence of such notice. The court refuse this instruction, and say to the jury, if they believe the facts sworn to by the notary, there was legal notice.

8. That in order to charge the defendant, it is necessary that they should believe from the evidence that the notice sent to the drawer, by express terms, or by natural or necessary implication from the language used, contained in substance a true description of the bill, an assertion of due presentment and dishonor, and that the holder or some other person, looked to the drawer for indemnity and reimbursement. In answer to this, the court will say, that the notice must have been sufficient to apprize the drawer of the bill in question, that it was not paid, though demand for payment was made, and that the holder will look to him for payment.

9. That the State Bank of Indiana, by its charter, had no right on a loan of money, or discount of a note or bill, to take more

than six per cent. per annum, and that if there was on the discount of either of the original bills of exchange an illegal interest, and a corrupt agreement on the part of the bank, to take more than the legal rate of interest, and such was actually taken or contracted for, and the amount thereof included in the present bill, and that it was given for the same, then the latter can not be collected from this defendant. (1) Under this head it is argued, that a willful violation of the charter of the bank, renders the contract void, irrespective of the general usury laws. [Bank of U. S. v. Owens] 2 Pet. [27 U. S.] 527; [Bank of U. S. v. Waggoner] 9 Pet. [34 U. S.] 400, and many other cases settle this point. (2) That if the original transaction was illegal and usurious, the renewed security is so. Walker v. Bank of Washington, 3 How. [44 U. S.] 71; [Moncure v. Dermott] 13 Pet. [38 U. S.] 345. (3) The instruction as prayed for, does not make the mere loaning of depreciated bills per se, an act of usury, or violation of the charter, but leaves it as a question of fact for the jury, and is, therefore, directly within the case of the Bank of U. S. v. Waggoner, 9 Pet. [34 U. S.] 400. We contend to the jury, that there are strong circumstances to show the usury in this case. That it consisted in paying out depreciated bank notes, and in requiring the paper to be payable in New York.

In answer, the court gave the ninth instruction. And they remarked to the jury, the usury set up having been pleaded, may be insisted on by the defendant. The consideration of the bill now before us, it is considered, was usurious. That consideration consisted in two previous bills. One was a draft on Elijah Lacy, drawn by O. P. Lacy, for three thousand dollars, on the order of William B. Beason, five months after date, and which was dated 1st February, 1840. The other bill by the same parties, was dated the 14th of April, 1840, for two hundred dollars, payable in ninety days. These bills having been protested for non-payment, were returned to the bank. At the time they were negotiated at the bank, it paid specie, and continued to do so until July, 1840. The interest was charged upon the above bills, and five per cent. damages allowed in such cases by the Michigan statute. A payment of fifteen hundred dollars was made on the bills, and the bill of exchange now in controversy was given for the balance still due. The charter of the bank prohibits it from taking more than six per cent. interest. Now, to constitute usury, there must be a loan made, corruptly, for more than the legal rate of interest, and with the intention of evading the law. If depreciated notes are loaned as money, it may be a circumstance connected with others, to show a corrupt intent. But the Bank of Indiana paid specie at the time, and its notes, though less valuable than Eastern

paper, can not be considered as depreciated paper, so long as an application at the bank would convert them into specie. It is said that at the time the first bills were given, a bill on New York was worth from seven to ten per cent. more than the paper of the bank. This refers to bills payable at sight; there has been no evidence as to the value of bills on New York payable on time. One of the original bills was payable in five months, the other in three. From the course of trade, exchange is generally in favor of the East and against the West. In buying such bills, banks generally incur some risk. The exchange varies, and the payment may not be made punctually. The present case illustrates this fact. Such a transaction being bona fide, is never usurious. Banks deal in bills of exchange, a purchase of a bill, at any price, is not usurious. But if such purchase is made as a cover to the transaction, it may be usurious. The usual course is, to draw Eastern bills and ship produce to meet them. Such a transaction is not usurious. In the language of the supreme court in [Bank of U. S. v. Waggoner] 9 Pet. [34 U. S.] 399, "there must be an intention, knowingly, to contract for, or to take usurious interest, for if neither party intend it, but act bona fide and innocently, the law will not infer a corrupt agreement." In the same case, the court says, "if the contract was fairly made by the parties, making the contract intended, to exchange credits for the accommodation of Owens; that the Bank of Kentucky was solvent, and able to pay its debts by coercion, then the contract was not void for usury, nor contrary to the charter of the bank, notwithstanding the party knew that the Bank of Kentucky did not pay specie for its notes without coercion, and that those notes were in exchange at a depreciation of from thirty-three to forty per cent. below par."

10. "That if the original bills of exchange were legal and untainted, yet if on the renewal of them more than legal interest was unlawfully stipulated for and included in the paper taken on renewal, then such paper is void." This instruction was given by the court.

11. "That if the jury find, that the first bills were drawn, accepted and indorsed in Michigan, and that the parties all resided there at the time and since then, the law of that state fixes the damages chargeable to the drawer, upon their dishonor, and if they find that in the renewal of the paper the agent of the holder, with the assent of his principal, intentionally exacted more than three per cent. as damages on the protested paper, and included such amount in the bill taken on renewal, and that the present bill, now in dispute, was intentionally drawn so as to cover damages of more than three per cent., besides expenses, then the defendant is not liable upon it, and the verdict must be for him."

12. That if the renewed paper were in other respects legal, yet, if in addition to the full amount due on the former bills, with damages, expenses and interest, the jury believe that the State Bank required of Obed P. Lacy, and he agreed thereto, as a condition of renewal and extension, that he should make the paper taken on renewal, payable in New York, and that exchange on New York was worth a premium to the bank, and such condition was imposed, with a view to secure to the bank, at the expense of the debtor, more than legal interest, or a profit in addition to the rate of interest fixed by its charter; and that the present bill was made and delivered in pursuance of such agreement, then they are to find for the defendant.

The instructions have been drawn out to an unreasonable length, and have presented the same views under somewhat different modifications. As to the eleventh instruction, it is refused, as also the last one. It is immaterial where the parties resided, the bills were negotiated at the bank in Indiana. Until the bank discounted them they were of no validity, as they were bills for discount, and not for any other purpose. The state where the contract was negotiated, must regulate the damages on protest, and they were rightly calculated under the Indiana law. No additional remarks need be made in regard to exchange.

Under the instructions of the court the jury found a verdict for the plaintiff. Judgment.